**UNITED SATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROLANDA HILL-JACKSON, as Special | ) | |
| Representative of the Estate of Rafeal | ) | |
| LaShan Hill, | ) | |
| | ) | No. 10 C 364 |
| Plaintiff, | ) | |
| | ) | Hon. Marvin E. Aspen |
| v. | ) | |
| | ) | |
| FAF, Inc.; Forward Air, Inc.; Double J | ) | |
| Transport; Double J Transportation, Inc.; and | ) | |
| Robert L. Miller, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Marvin E. Aspen, District Judge:

Plaintiff Rolonda Hill-Jackson originally filed her complaint in the Circuit Court of Cook

County against Defendants FAF, Inc., Double J Transport, Double J Transportation, Inc., and

Robert Miller, alleging various tort claims.  Defendants removed the case to this Court pursuant

to 28 U.S.C. § 1332.  Presently before us is the Defendants' motion to transfer the case to the

Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).  For the reasons discussed below,

we grant the motion.

**I.      BACKGROUND**

This case involves claims relating to an automobile accident on December 7, 2009, when

Defendant Miller's tractor trailer allegedly struck Rafael LaShan Hill, killing him.  The accident

occurred on Interstate 65 in Indiana.  Hill-Jackson, Hill's mother and special representative of

his estate, lives in Chicago, and Hill resided and attended school in Indiana prior to his death.

(Compl. ¶ 1; Mot. Ex. C, Boerger Aff. ¶ 5.)  FAF and Forward Air are Tennessee Corporations, Double J Transport is a Wisconsin limited liability corporation, Double J Transportation, Inc., is an Illinois Corporation, and Miller is a resident of Wisconsin.  (Compl. ¶¶ 2, 4, 8, 10, 13.)

## II.   ANALYSIS

### A.   Leave to File Additional Exhibits and Sur-Reply

Before we begin our analysis, we must address Plaintiff's motions for leave to file additional exhibits and a sur-reply.  [Dkt. Nos. 41, 47.] Since Defendants have had the opportunity to respond to the arguments and evidence presented in these filings, we grant Plaintiffs' motions.

### B.   Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil matter to another district where venue is proper.  A court may transfer a case if the moving party shows that: (1) venue is proper in the district where the action was originally filed; (2) venue would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice.  *See Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007).

The parties appear to concede that venue is proper in either the Northern District of Illinois or the Southern District of Indiana, and we agree.  Therefore, we focus on whether a transfer will serve the convenience of the parties and witnesses and the interests of justice.  In doing so, we must weigh both private and public factors, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *In re Nat'l*

*Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330

U.S. 501, 508, 67 S. Ct. 839, 843 (1947)).  The weight afforded to each factor is within the

discretion of the district court.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.

1986) ("The weighing of factors for and against the transfer necessarily involves a large degree

of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge.").

"When deciding a motion to transfer venue, the court must accept as true all of the plaintiff's

well-pleaded facts in the complaint, unless they are contradicted by affidavits or other

appropriate evidence from the defendant."  *Bankers Life & Cas. Co. v. Case, et al.*, No. 05 C

6532, 2005 WL 3542523, at *1 (N.D. Ill. Dec. 24, 2005) (quoting *Andrade v. Chase Home Fin.,

LLC,* No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005)).

### 1.     Private Factors

Relevant private factors for a motion to transfer venue include: "(1) the plaintiff's choice

of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof;

(4) the convenience of the parties; and (5) the convenience of witnesses."  *Morton Grove

Pharms.*, 525 F. Supp. 2d at 1044 (citing *Schwartz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829,

835 (N.D. Ill. 2004)).  We discuss each in turn.

### a.     Plaintiff's Choice of Forum

The plaintiff's forum choice is generally given great deference, particularly when the

plaintiff resides in the chosen district.  *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D.

Ill. 1995); *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994); *FUL Inc. v. Unified

Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993).  Because Hill-Jackson resides in

the Northern District of Illinois, her chosen forum, this factor weighs against transfer.  It can be

"overcome only when the private and public interest factors point towards trial in an alternative forum." *Van Horn v. Graves*, No. 01 C 5186, 2002 WL 27658, at *2 (N.D. Ill. Jan. 10, 2002) (citing *AAR Int'l, Inc. v. Nimeliss Enters., S.A.*, 250 F.3d 510, 524 (7th Cir. 2001)). Specifically, when the liability forming-conduct occurred outside the selected forum, "the plaintiff's preference has minimal value." *Dunn* at 65 (quoting *Robinson v. Town of Madison*, 752 F. Supp. 842, 847 (N.D. Ill. 1990) (citations omitted)).

### b.  Situs of Material Events

Hill's death on the morning of December 7, 2009 was the result of two separately reported accidents on Interstate 65 in Indiana, the second of which involved Miller's truck striking Hill. (*See* Mot. Exs. A-1, Police Report 1, Dec. 7, 2009; A-2, Police Report 2, Dec. 7, 2009.) Hill-Jackson contends, however, that the events leading up to accident—that is, Miller's late arrival at the Des Plaines, Illinois Forward Air Terminal, the conduct of the terminal's employees, and the distribution of the load in Miller's trailer—constituted the majority of material events. (*See, e.g.*, Resp. at 2; Sur-Reply at 2–3.) While we agree the events in Des Plaines are relevant to this case, the material event is undoubtedly the accidents that occurred on I-65 in Indiana. *See Cole v. Bell*, No. 09 C 4832, 2009 WL 4730966, at *1 (N.D. Ill. Dec. 7, 2009) (stressing that the situs is where the accident occurred); *Van Horn*, 2002 WL 27568, at *2 (same). Thus, this element favors transfer.

### c.  Access to Sources of Proof

The third private factor for determining whether to transfer venue is the relative ease of access to sources of proof. Neither party briefed this issue, and it appears that the predominant sources of proof will be witness testimony. To the extent that the jurors need to see the accident

scene, it is likely, as Hill-Jackson contends, that photographs of the road could be used.  (Resp. at 10.)  Additionally, Forward Air removed the trailer from the wrecker yard in Indiana and delivered its freight.  (Sur-Reply at 2.)  Thus, this element neither favors nor disfavors transfer.

### d.    Convenience of Parties

Defendants concede that wherever the case is tried, they will be inconvenienced because Miller is a Wisconsin citizen and Double J's, FAF's, and Forward Air's principal places of business are Wisconsin, Ohio, and Tennessee respectively.  (Mot. at 6.)  Consequently, since Hill-Jackson resides in Chicago, this factor favors trying the case in the Northern District of Illinois.

### e.    Convenience of Witnesses

For the final private factor, we consider the relative convenience of each forum for potential witnesses, which is one of the most important factors.  *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998) ("The convenience of witnesses is often viewed as the most important factor in the transfer balance.").  When assessing this factor, we distinguish between party and non-party witnesses.  *Morton Grove Pharms.*, 525 F. Supp. 2d at 1045.  We assume that each party will be able to compel its employees to testify without issue, regardless of the forum.  *YKK USA, Inc. v. Baron*, 97 C 939, 1998 WL 26168, at *2 n.2 (N.D. Ill. Jan 16, 1998).  However, if a proposed witness is not a party to the action, we must consider the court's ability to compel the witness to testify through compulsory process.  *First Nat'l Bank v. El Camino Res.*, *Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006).

In support of transferring the case to the Southern District of Indiana, Defendants offer the four witnesses involved in the accident who are residents of Lafayette or West Lafayette,

Indiana; the three investigating officers[1] who are stationed in West Lafayette, Indiana; and other

non-party witnesses including emergency response crews and technicians performing alcohol

and drug tests whose locations are not yet known, but likely to be in Indiana. (Mot. at 6–8; *see*

Mot. Exs. A-1, A-2.) Lafayette and West Lafayette, Indiana are 105 and 109 miles straight-line

distance from this Court respectively.[2] (Mot. at 7.) Accordingly, these witnesses are beyond our

100-mile radius subpoena power under Fed. R. Civ. P. 45(c)(3)(A)(ii).[3]

Hill-Jackson cites deposition testimony from witnesses Latasha Williams and Alexander

Birdsall where they state they would abide by a subpoena from this Court *requiring* them to

appear in Chicago. (Resp. to Def.'s Obj. to Mot. for Leave to Supplement Exs. at 1; *see* Pl.'s

Mot. for Leave to Supplement Exs. Ex. B, Williams Dep. 65:16–20, Ex. C, Birdsall Dep.

53:20–24.) However, we lack the authority to require these witnesses to appear, and, therefore,

the promises of two witnesses among the multiple that would need to testify are of little

consequence. Fed. R. Civ. P. 45(c)(3)(A)(ii); *Childress v. Ford Motor Co.*, No. 03 C 3656, 2003

WL 23518380, at *3 n.1 (N.D. Ill. Dec. 17, 2003) ("The fact that a witness outside of this

Court's subpoena power . . . purportedly agreed to travel . . . is of little consequence.")

Hill-Jackson also identifies a number of witnesses that reside nearer Chicago, including

Hill's brother, girlfriend, uncle, great-uncle, and pastors of his church. (Resp. at 10–11.) While

some of these witnesses will certainly be needed to testify, we do not base this factor "on which

---

[1] We agree with Hill-Jackson that it is unlikely that all three officers would need to testify. (*See* Resp. at 13.)

[2] Distances were measured with the Google Earth ruler function *available at* http://www.googleearth.com.

[3] As a practical matter, the police officers are still likely to travel to Chicago, *Pierce v. Sys. Transport, Inc.*, 01 C 9205, 2002 WL 731136, at *2 (N.D. Ill. Apr. 24, 2002) (noting police officers are likely to travel from Chicago in a motion to transfer venue to the Northern District of Indiana).

party produces a longer witness list." *Hanley*, 6 F. Supp. at 775. Instead, "the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Id.* As such, we note that several of Hill-Jackson's listed witnesses' testimony—such as the numerous family members and the employees at the shipping hub—will likely be cumulative. Moreover, we note that it is more likely that the decedent's friends and blood-relatives will attend than the non-party eyewitnesses whose live testimony we seek to ensure at trial. *Childress,* 2003 WL 23518380, at *4 (noting that blood-relatives are more likely to voluntarily attend trial than non-party witnesses, and it is more important to ensure the live testimony of witnesses who saw an automobile accident than other witnesses). To the extent that the testimony of the employees of the Des Plaines shipping hub or other employees of the Defendants is important, we assume Defendants can compel them to attend trial and they do not factor into our analysis.[4] *YKK*, 1998 WL 26168, at *2 n.2; *see First Nat'l Bank*, 447 F. Supp. 2d at 913 ("[I]t is presumed that party witnesses will appear voluntarily.")

Hill-Jackson also argues at length that liability is not at issue in this case, and, therefore, the Indiana witnesses will not be useful at trial. (Resp. at 13; Sur-Reply at 10.) She argues that even if they are needed, their testimony can be procured through written depositions and modern litigation techniques such as video conferencing. (Resp. at 14; Sur-Reply at 10.) First, we favor live testimony. *Bueler v. S & G Enters. Inc.,* No. 09 C 1396, 2009 WL 1543664, at *5 (N.D. Ill. Jun. 2, 2009) (citing *Bally Mfg. Corp. v. Kane*, 698 F. Supp. 734, 738 (N.D. Ill. 1988) ("The live

---

[4] Despite her pleadings, many of the witnesses Hill-Jackson identifies are not employed at Forward Air's Des Plaines, Illinois facility. (Obj. to Pl.'s Mot. For Leave to File Sur-Reply at 2, Ex. A, Parker Aff. ¶¶ 20–29.)

testimony of material non-party witnesses is preferred.")).  Also, to the extent that Hill-Jackson's

witnesses could not travel to Indiana, the same Federal Rules would apply to them as well.

Second, we fail to see how liability is not at issue.  Despite Hill-Jackson's attempt to

characterize these witnesses' testimony as useless, (*see, e.g.*, Resp. to Def.'s Obj. to Mot. for

Leave to Supplement Exs. at 5), the testimony of witnesses at the scene of the accident will

certainly be relevant at trial.  Additionally, Plaintiff cannot argue that liability is at issue with

respect to the actions that occurred in Illinois, (*see, e.g.*, Sur-Reply at 2–3), but not at issue with

respect to the actual accident.  In fact, her brief objecting to the venue transfer states, "Miller

was driving recklessly for the conditions."  (Resp. at 17.)  Hence, by her own admission, the

accident scene is relevant to this case.  Therefore, the convenience of witnesses favors transfer.

### 2.      Public Factors

Finally, we must add to our balance the interests of justice.  *Coffey,* 796 F.2d at 220–21.

We consider factors related to the efficient functioning of the courts, including the "court's

familiarity with the applicable law, the speed at which the case will proceed to trial, and

desirability of resolving controversies in their locale." *First Nat'l Bank,* 447 F. Supp. 2d at 912.

### a.      Familiarity with Applicable Law

Federal courts apply the choice of law rules of the state in which they sit, and,

accordingly, we apply Illinois' choice of law rules.  Illinois follows the Restatement (Second) of

Conflicts of Law for tort claims.  *See Townsend v. Sears, Roebuck & Co.,* 227 Ill. 2d 147, 157,

879 N.E.2d 893, 899 (2007); *see also* Restatement (Second) of Conflicts of Law (1971)

[hereinafter Restatement].  The Restatement contains several layers of guidance for choice of

law questions.

The Illinois Supreme Court's most recent opinion on this question is *Townsend*, where the court explained the Restatement at length and applied it to a products liability case.  To begin their analysis, the *Townsend* court first noted that Section 146 of the Restatement is the appropriate starting point for personal injury cases.  *Townsend,* 227 Ill. 2d at 164, 879 N.E.2d at 903.  It provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liability of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 146.  "The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there . . . ."  Restatement § 146, cmt. e.  Even though the parties argue at length about Hill's domicile, it is undisputed that he leased an apartment in Indiana, and his presence on the Indiana highway was not fortuitous.  *Cf. In re Aircrash Disaster Near Roselawn, Indiana,* 926 F. Supp. 736, 742 (N.D. Ill. 1996) (noting the location of the injury was fortuitous, and therefore less material, since the plaintiffs did not have a previous connection to the crash site); *see also Townsend*, 227 Ill. 2d at 166, 879 N.E.2d at 904 (quoting Restatement § 146, cmt. c ("The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those *relatively* rare situations where . . . the state of injury bears little relation to the occurrence and the parties."))  Accordingly, there is a presumption that Indiana law will apply.

Next, we determine whether this presumption can be overcome by the most significant relationship factors in Section 145(2).  *Id.* at 166–67, 879 N.E.2d at 905.  These factors are:

(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; © the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties centered. Restatement § 145(2).  As we discussed above, factor (a) creates a presumption in favor of Indiana, *see Townsend,* 227 Ill. 2d. at 166, 879 N.E.2d at 904, so we will examine the other three factors.

Factor (b) also favors Indiana law.  In an attempt to tilt this factor towards Illinois law, Hill-Jackson asserts that several events that occurred while Miller received his freight in Illinois contributed to the accident.  (Resp. at 12–13; Sur-Reply at 2–4.)  However, but for Miller's allegedly negligent driving of the truck in Indiana, Hill's death would not have occurred.  Hence, the accident itself outweighs the conduct that occurred in Illinois.  Defendants also allege contributory negligence, which implicates conduct that occurred in Indiana.  *Townsend,* 227 Ill. 2d at 169, 879 N.E.2d at 906.

Regardless, most of the conduct that Hill-Jackson alleges occurred in Illinois has been rebutted by affidavits or shown to have occurred in Ohio and Wisconsin.  (Obj. to Pl.'s Mot. for Leave to File Sur-Reply at 2–3, Exs., A, Parker Aff. ¶¶ 3–19, B, Miller Aff. ¶¶ 3, 7–16.)  Moreover, the pre-accident conduct of Defendants FAF and Double J is likely immaterial because they have both conceded that they are vicariously liable under Indiana or Illinois law if Miller was negligent.[5]  (Ans. ¶¶ 51, 57; Reply at 5.)  *See U.S. Bank v. Lindsey,* 397 Ill. App. 3d 437, 445–446, 920 N.E.2d 515, 523–524 (1st Dist. 2009); *Rediehs Express, Inc. v. Maple,* 491 N.E.2d 1006, 1010 (Ind. App. 1986).  Ultimately, even if we assumed one hundred percent of the

---

[5] We do not rule out the possibility of theories of direct liability against FAF and Double J.

negligent conduct occurred in Illinois, "the local law of the state of injury will [still] usually be applied to determine most issues involving tort."  Restatement § 146 cmt. e.

      Factor ©, the domicile, residence, place of incorporation, and place of business of the parties, slightly favors Illinois.  Hill-Jackson is domiciled in Chicago.  Defendants do business in both states and neither state is Defendants' principal place of business or their place of incorporation.  Hill-Jackson contends that Hill's domicile was Illinois, arguing that he returned there for vacations and weekends, his girlfriend lived there, and he had an Illinois drivers license.  (Resp. at 9.)  Conversely, Defendants contend Hill's domicile is Indiana since he attended college, leased his apartment, and registered his car there.  (Def.'s Mot. at 3, 5, Ex. C, Boerger Aff. ¶¶ 3–5.)  Even if Hill's legal domicile was Illinois, it is clear that Hill's residence was Indiana.  (Mot. Ex. C, Boerger Aff. ¶¶ 3–5; *see* Resp. at 8–9.)  As such, Hill had an established connection to Indiana—he made use of their roads, registered his vehicle, went to school and lived there.  He could have reasonably expected to be governed by the laws of Indiana.  This scenario contrasts with situations where the place of the injury is fortuitous.  *See e.g.*, *Martinez v. Smithway Motor Xpress, Inc.,* No. 99 C 6561, 2000 WL 1741910, at *2 (N.D. Ill. Nov. 24, 2000) (refusing to choose the law of the jurisdiction where the accident took place because the plaintiff was fortuitously driving through the state without an established connection to it).  Notwithstanding, "the fact . . . that one of the parties is domiciled . . . in a given state will usually carry little weight of itself."  Restatement § 145 cmt. e.

      Factor (d), where any relationship between the parties is centered, is of little value.  If one did exist, it occurred at the accident scene.  Ultimately, factor © does not overcome the other factors, and Section 145 suggests Indiana law would govern this matter.

11

Finally, we determine whether the general choice of law principles embodied in Section 6 lead us to conclude differently. *Townsend*, 227 Ill. 2d at 169, 879 N.E.2d at 906.  In personal injury actions, Sections 6(2)(d), 6(2)(e), 6(2)(f), 6(2)(g) are only minimally implicated.  *Id.* at 169–170, 879 N.E.2d at 906.  Thus, we must consider three elements from Section 6(2): (b) the relevant policies of the forum; © the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and (e) the basic policies underlying the particular field of law.

Hill-Jackson does not argue that Illinois tort law is different than Indiana's, and, although she earlier argued that the states' wrongful death statutes were also similar, (Resp. at 19–20,) she later correctly pointed out that Indiana law reduces the damages available to her.  (Resp. to Def.'s Obj. to Mot. For Leave to Supplement Exs. 5.)  She is correct; Indiana limits recovery to $300,000, while Illinois has no cap on damages.  *Compare* 740 Ill. Comp. Stat. Ann. 180/2 (West 2010) *with* Indiana Code Ann. 34-23-1-2 (West 2010).

Hill-Jackson repeatedly asserts that Illinois has a superior interest in compensating its domiciliary for the death of her son.  However, Indiana presumably has an interest in maintaining safe highways or protecting businesses from large damage awards in wrongful death cases.  *Townsend* is instructive on this issue.  There, in a products liability case, the Illinois Supreme Court rejected plaintiff's arguments that Illinois' interest was stronger, and applied Michigan law, which precluded punitive damages, applied a negligence standard, and similarly capped non-economic damages.  *Townsend,* 227 Ill. 2d at 171–74, 879 N.E.2d at 907–09.  In doing so, it recognized that Michigan had a strong interest in applying its policies and underscored the presumption that the place of injury determines the choice of law question.  *Id.*

12

at 173, 879 N.E.2d at 908.  The court recognized that while Illinois also has a strong interest in applying its laws, "[t]his factor must not be over emphasized." *Id.* at 174, 879 N.E.2d at 909. Since both states had an interest, Illinois' interests did not override the strong presumption in favor of the place where the injury occurred. *Id.* at 175, 879 N.E.2d at 909.

In light of *Townsend,* we agree that Illinois' interests do not overcome the strong presumption in favor of Indiana law.  While Hill-Jackson cites authority that favors Illinois for this reason, s*ee, e.g.*, *Burke v. J.B. Hunt Transport, Inc.,* 1992 WL 137153, at *4 (N.D. Ill. June 10, 1992) (finding Illinois' interest in compensating its domiciliary was dispositive, in part, because no party resided in Indiana), these cases are distinguishable.  Notwithstanding, *Townsend* expressed concern that earlier courts had "undervalued the specific presumptive rules," *Townsend,* 227 Ill. 2d. at 162, 879 N.E.2d at 902, and, thus, these cases may be of questionable assistance.  Ultimately, we find that Indiana law will govern this case, weighing in favor of a transfer.

### b.      Speedy Case Resolution

According to the 2009 Federal Court Management Statistics, *available at* http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2009.pl, an average civil case is resolved slightly faster in the Southern District of Indiana (average of 9.4 months) than the Northern District of Illinois (average of 9.9 months), and the time to trial for civil cases is also slightly faster in the Southern District of Indiana (28 months versus 31 months).  These statistics suggest that the parties would not receive a speedier resolution of their case in the Northern District of Illinois.

c.      **Relationship of Communities to Litigation**

"Resolving litigated controversies in their locale is a desirable goal of federal courts."

*First Nat'l Bank*, 447 F. Supp. 2d at 914.  While "Illinois has a strong interest in providing a

convenient forum for redressing injuries inflicted by out-of-state-actors," *id.,* as we discussed in

the previous section, Indiana has an equal interest in protecting the companies that do business in

its jurisdiction and ensuring its highways are safe.  *See id.*  As such, this factor neither favors nor

disfavors transfer.

3.      **Summary of Balance**

The situs of the material events occurred in Indiana, most non-party witnesses are located

in Indiana, and the law of Indiana governs the claims in this suit.  Although Hill-Jackson's

choice is afforded deference and she will be moderately inconvenienced by litigating these

claims in Indiana, the balance of factors weighs heavily in favor of transfer.

**III.    Conclusion**

Accordingly, for the reasons stated above, we grant Defendants' motion to transfer

venue.  This case is transferred to the Southern District of Indiana.  It is so ordered.


_____
Marvin E. Aspen
U.S. District Judge

Date: August 25, 2010

14