UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROLANDA HILL-JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-01296-TWP-MJD |
| | ) | |
| FAF, INC., FORWARD AIR, INC., | ) | |
| and ROBERT L. MILLER | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on several of Plaintiff's Motions for Partial Summary Judgment, including Plaintiff's Motion for Partial Summary Judgment as to the Liability of Brian Lancaster [Dkt. 100], Plaintiff's Motion for Partial Summary Judgment as to the Liability of Defendant Robert Miller [Dkt. 125], Plaintiff's Motion for Partial Summary Judgment as to the Liability of Latasha Williams [Dkt. 130], Plaintiff's Motion for Partial Summary Judgment as to John Rimmer [Dkt. 139], Plaintiff's Motion for Partial Summary Judgment as to Rafeal Duenas [Dkt. 141], and Plaintiff's Motion for Partial Summary Judgment as to Rafeal Hill [Dkt. 158]. The Court, being duly advised, **DENIES** each of the Plaintiff's motions herein.

## I. FACTUAL BACKGROUND

The following background section is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Defendants as the non-movants. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

This case involves claims arising from a tragic automobile accident that occurred on Interstate 65 in Indiana on December 7, 2009, which resulted in the death of Plaintiff Rolanda Hill-Jackson's ("Hill-Jackson") twenty-one year old son, Rafael Hill ("Hill"). Defendant Robert Miller ("Miller") was operating a tractor trailer southbound on I-65 when he passed through a multi-vehicle accident scene and

struck Hill and his vehicle, killing him.  Hill-Jackson, as personal representative of Hill's estate, brought a wrongful death action against the Defendants in the Circuit Court of Cook County, Illinois, which matter was removed to the United States District Court for the Northern District of Illinois.  The case is before this Court on transfer from the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), and brought by Hill-Jackson as Hill's mother.

The accident occurred on southbound I-65 in Clinton County, Indiana on the overpass just north of Exit 28 (the "Frankfort exit") and involved two multi-vehicle accidents and a single-vehicle accident, involving a total of six vehicles.  The particular section of the roadway in question consists of an uphill sweeping curve to the right that leads immediately onto an overpass, followed by the Frankfort exit to the right.  The weather conditions at the time of the accident caused the roads to have an accumulation of ice and snow, making the roadway slick, particularly on the overpass.  The chain of events began around 5:00 a.m. when Brian Lancaster ("Lancaster") and Latasha Williams ("Williams") were both traveling southbound on I-65.  John Rimmer ("Rimmer") was also in Williams' SUV.  Around the 158 mile road marker, a box truck passed the left sides of both Lancaster's and Williams' vehicles.  Williams alleges that she was struck from behind, possibly by Lancaster or the box truck, which caused her to lose control of her SUV and spin out.  However, Lancaster alleges that Williams lost control of her vehicle when she attempted to dart from the left lane into the right lane to exit the highway.  Williams' SUV struck the left guard rail, and then struck Lancaster's minivan on its driver side.  Williams' SUV came to a stop in the left lane, facing traffic and blocking the lane.  After being struck by Williams, Lancaster moved his minivan off the roadway and partially up the Frankfort exit ramp.  At some point after the collision between Williams and Lancaster, a grey sedan with two female occupants, Sarah Saylor ("Saylor") and Melissa Semon, spun out of control and came to rest on the right shoulder facing southbound traffic, approximately fifty to one hundred yards north of Williams' SUV.  Williams claims that Hill's Pontiac then came through the accident scene and also struck her SUV, coming to rest south of Williams' SUV in the right lane.

Rafeal Rosa Duenas ("Duenas") subsequently came upon the accident scene in a pick-up truck. Duenas swerved to avoid Saylor's grey sedan and attempted to avoid Williams' SUV, but the ice on the overpass caused his vehicle to slide and strike Hill's vehicle, which he claims was stopped in the right lane. Williams claims that Duenas also struck her SUV in the left lane before striking Hill's vehicle. Duenas' truck came to rest at an angle facing south by southeast partially in the right lane. It is uncertain as to where Hill's vehicle came to rest after being hit by Duenas' truck; conflicting testimony places his vehicle either in the center of the road or in the left lane approximately forty feet south of Williams' vehicle.

Miller, driving a tractor trailer owned by Defendant Double J Transportation, Inc. and leased by Defendant FAF, Inc., came upon the accident scene somewhere between *two* and *thirty* minutes following the accidents involving Saylor, Williams, Lancaster, Duenas and Hill. As Miller approached the overpass, he saw Saylor's sedan in the right lane an estimated one hundred yards in front of him over the crest of the hill, at which point he moved toward or into the left-hand lane. Almost immediately he saw Williams' SUV in the left lane. Miller attempted to brake, but the truck continued on its path due to the ice on the overpass. Miller believes that he struck Williams' vehicle, then made impact with Hill's vehicle, and ultimately, Hill himself. Miller's truck came to a rest along the right guard rail. It is uncertain as to where Hill was located at the time Miller's truck struck him; however, Officer Kenton Wainscott, the investigating officer, and the coroner investigating Hill's death believe he had to have been somewhere outside of his vehicle in order to end up under the wheels of Miller's truck.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(a). "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca* 555 F.3d 582, 584 (7th Cir.

2009).   Nevertheless, the court's favor toward the non-moving party does not extend to drawing "inferences that are supported only by speculation or conjecture." *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010) (internal quotations omitted). "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 490 (7th Cir. 2007).   A party may file a motion for partial summary judgment in order to dispose of and narrow down issues for trial.

## III.   DISCUSSION

The parties have filed a number of motions for partial summary judgment on issues related to choice of law, domicile, and liability.  Before the Court are Plaintiff's six motions for partial summary judgment as to the liability of Lancaster, Miller, Williams, Rimmer, Duenas, and Hill. Hill-Jackson asks this Court to grant partial summary judgment finding that Lancaster, Willaims, Rimmer, Duenas and the decedent Hill, have no-fault and moves the Court to grant partial summary judgment finding that Miller is 100% at fault. This Order will address the six motions related to the liability issues described above.  The Court has already determined in its prior order that Indiana substantive law is applicable in this case. [Dkt. 189].

This case presents clear cut issues of negligence.  Under Indiana law, negligence cases are "rarely appropriate" for summary judgment due to the fact that these cases are fact sensitive and are governed by a standard of the objective reasonable person, which can only be determined by a jury after hearing all of the evidence.  *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).  Despite this well established rule, Plaintiff asks this Court to determine, as a matter of law, the liability of not only identified non-party defendants, but the parties themselves in a series of virtually identical motions for partial summary judgment.  Plaintiff's own briefs state that causation is normally a question of fact for the jury, but asks the Court to determine that "undisputed facts" show that the Defendant cannot show the requisite level of causation as a matter of law.  [Dkt. 101 at 3-4; Dkt. 126 at 5; Dkt. 131 at 8; Dkt. 140 at 10; Dkt. 142 at 6; Dkt. 159 at 6].  However, Plaintiff blatantly ignores the requirement that facts be construed in light most

4

favorable to the non-moving party and attempts to characterize facts favorable to the Plaintiff as "undisputed" when the record is fraught with disputes of fact—some pointed out by the Plaintiff herself—that are appropriate to be resolved only by the jury.  The fact that some of these facts are provided by the investigating officer and coroner, as heavily relied upon and repeatedly emphasized by the Plaintiff, does not automatically give these version of the facts controlling weight such that this Court may take them as undisputed and determine the liability of the various parties and non-parties as a matter of law.

Plaintiff attempts to rely on *Slinkard v. Babbs,* 112 N.E.2d 876 (Ind. Ct. App. 1953) for the proposition that the collisions in which the non-party defendants were involved only created a "condition" and that they cannot be held liable as a matter of law for Hill's death;  however, the court in *Slinkard* was applying Kentucky law. *Id.* at 879.  More recent and relevant case law characterizes this "condition" proposition merely as the doctrine of superseding or intervening cause, which has long been a part of Indiana law. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind. 2002). "The doctrine of superseding or intervening causation… provides that when a negligent act or omission is followed by a subsequent negligent act or omission so remote in time that it breaks the chain of causation, the original wrongdoer is relieved of liability." *Id.*  A subsequent act is "superseding" when the harm resulting from the original negligent act could not have been reasonably foreseen by the original negligent actor, with foreseeability being a question of fact for the jury. *Id. See also Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989) ("[T]he legal effect of the intervening agency is not determined by characterizing a defendant's actions as merely creating a condition, but depends instead upon whether…the agency might reasonably have been expected to intervene in such a way as to produce an injury similar to the one actually caused.")

This doctrine has been incorporated into Indiana's Comparative Fault Act, enacted subsequent to *Slinkard* in 1985, which allocates damages among parties according to the degree of their respective negligence. *Control Techniques, Inc.*, 762 N.E.2d at 107.   Even prior to the enactment of Indiana's Comparative Fault Act, it has been the law in Indiana that where a negligent actor's act sets in motion a chain of events leading to the plaintiff's injury, the key to holding that actor to be the proximate cause of

5

the ultimate injury is whether the ultimate injury was reasonably foreseeable as the natural and probable consequence of the act. *Havert v. Caldwell*, 452 N.E.2d 154, 158 (Ind. 1983). "[I]f harm is a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable even though other independent agencies intervene between his negligence and the ultimate result." *Id.* at 159 (quoting 21 I.L.E. *Negligence* § 67, at 330-33 (1959)). Thus, it is for the jury to decide whether the accident that resulted in Hill's death could have been reasonably foreseen as a harm resulting from the original negligent act or acts of the parties and non-parties, or whether Miller's actions should be viewed as an unforeseeable, superseding act.

Viewing the evidence and reasonable inferences to be drawn therefrom in the non-moving party's favor, there are genuine issues of material fact as to all of the parties and non-parties which would make it inappropriate for this Court to make a judgment as a matter of law as to the liability of the individuals that are the subjects of Plaintiff's numerous motions. It is for the jury to weigh these facts and determine whether Hill's death was a foreseeable result of their respective actions. The pertinent material factual disputes related to each individual are as follows:

**A.     Latasha Williams**

There is a question of material fact as to whether Williams was the cause of the initial collision and whether the subsequent events leading up to Hill's death were the reasonably foreseeable result of that collision. Williams testified in her deposition that she was hit from behind by either Lancaster or the box truck, causing her to lose control of her vehicle, while Lancaster testified that Williams lost control of her SUV in a sudden attempt to change lanes. There is also a question of material fact as to how long Williams' vehicle remained in the roadway. Various testimony from Williams, Lancaster, Officer Wainscott, and another witness—and indeed Plaintiff's own brief—states that the collision of Miller and Hill occurred between *two* and *thirty* minutes after the initial collision, which would have an impact upon whether Williams had time to safely move her vehicle out of the roadway, which she was obligated to do

under Indiana law,[1] prior to Miller's collision with Hill, and whether the subsequent collisions were close enough in time to be a continuation of the first. These factual disputes must be decided by the jury.

**B.    Brian Lancaster**

There is a question of material fact as to whether Lancaster was the cause of the first collision between his minivan and Williams' SUV and whether the subsequent events leading up to, and including, Hill's death were the reasonably foreseeable result of that collision.   As stated above, there is conflicting evidence as to whether Williams was hit from behind, whether Lancaster or the box truck hit her, or whether Lancaster's first contact with Williams' vehicle occurred when she rebounded off of the left guardrail into Lancaster's vehicle.  The jury must also decide if the subsequent events were a foreseeable result of Lancaster's actions.

**C.    John Rimmer**

Although Plaintiff argues that Rimmer, as a passenger in Williams' vehicle, owed no duty to Hill, and thus cannot be held liable for the negligence that caused Hill's death, there is evidence that presents a question of material fact as to whether Rimmer may have actually been driving Williams' vehicle at the time of the accident.  Melissa Semon, the passenger in Saylor's gray sedan involved in the single car accident, stated that she may have overheard Williams and Rimmer "changing their story" while speaking with the ambulance personnel with regard to who was driving Williams' SUV.  It is also up to the jury to decide whether Rimmer acted as a reasonably prudent person in failing to move Williams' SUV off of the roadway when he may have been in a position to have done so.

**D.    Rafeal Rosa Duenas**

There is a question of material fact as to whether Duenas had an opportunity to avoid hitting Hill's vehicle, just as Plaintiff alleges that Miller had an opportunity to do so.  It is for the jury to decide whether Duenas acted negligently in the operation of his truck and whether he may be partially at fault for

---

[1] Ind. Code § 9-26-1-2 provides that the driver of a vehicle involved in an accident must stop her vehicle in a manner that does not obstruct traffic more than necessary and move the vehicle off of an interstate highway "as soon as safely possible." Ind. Code § 9-21-16-1 provides that disabled vehicles may not be left on the highway unless it is impossible to avoid doing so.  Williams testified that she was able to drive her vehicle away from the accident scene afterwards.

Hill's death by colliding with Hill's vehicle first, causing his vehicle to be in the path of Miller's truck and/or causing him to alight from his vehicle into the path of Miller's truck.

**E.     Robert Miller**

There are several questions of material fact with regards to Miller that would preclude summary judgment. There is a dispute as to when Miller applied his brakes in an attempt to avoid the accident; Miller states that he applied his brakes when he was one hundred yards from Saylor's vehicle, while Williams testified that Miller did not apply his brakes until after he hit Hill. There is a dispute of fact as to whether Miller was rushing because he was "under the gun" trying to deliver a load on time. Despite Plaintiff's repeated citations to FAF company policy, statutes, and regulations, it is for the jury to determine whether Miller operated his truck unreasonably in light of the road conditions or whether he acted as a reasonable person would when confronted with an emergency situation such as the one that existed at the accident scene. It is impossible and inappropriate for the Court to determine that Miller was 100% responsible for Hill's death as a matter of law.

**F.     Rafeal Hill**

There are several questions of material fact relating to Hill's contributory fault as well. Plaintiff states in her brief that it is "undisputed" that Hill was "alive and well" after the first accident, but then goes on to say that none of the witnesses ever saw Hill prior to him being found under Miller's truck. [Dkt. 159 at 4-6]. There is only the assumption by the investigating officer and coroner that Hill was somewhere outside of his vehicle. As pointed out by the Plaintiff herself, there is a question of material fact as to where Hill's vehicle was located after being struck by Duenas. Officer Wainscott and Williams placed Hill's vehicle in the left lane, south of Williams' vehicle, while Duenas stated that Hill's vehicle was located in the center of the roadway. Plaintiff attempts to dismiss this fact as immaterial, but it is very relevant to the jury's determination as to whether Hill may have acted unreasonably by exiting his vehicle, placing himself in harm's way. It cannot be determined, as a matter of law, that Hill had 0% contributory fault in the accident. This question is appropriate only for a jury, not for the Court.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that there are numerous questions of material facts precluding summary judgment as to the liability of each of the parties and non-parties involved in this case. Therefore, the Court **DENIES** Plaintiff's motions for partial summary judgment as to the liability of Brian Lancaster [Dkt. 100], Robert Miller [Dkt. 125], Latasha Williams [Dkt. 130], John Rimmer [Dkt. 139], Rafeal Duenas [Dkt. 141], and Rafeal Hill [Dkt. 158].

SO ORDERED.

DATE: _____09/06/2011_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Yao O. Dinizulu
DINIZULU LAW GROUP, LTD.
dinizulu@dinizululawgroup.com

Thomas E. Farrell
SCOPELITIS GARVIN LIGHT HANSON & FEARY
tfarrell@scopelitis.com